UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALPHONSO DRAPEAU III,<br><br>Defendant. | 3:11-CR-30136-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

After serving approximately half of his sentence for second-degree murder, Defendant Alphonso Drapeau, III, pro se, moved for compassionate release under the First Step Act. Doc. 128; Doc. 131 at 11. Drapeau argues such relief is warranted because he needs to care for his mother, his sentence was disproportionate, he served most of his sentence, and his release would help rehabilitate him. Doc. 128 at 8.

The First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows an inmate to file a motion for compassionate release with a federal court if he has exhausted administrative remedies within the prison. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020); United States v. Condon, 458 F. Supp. 3d 1114, 1117 (D.N.D. 2020). "The inmate . . . may go directly to the court if the warden of the inmate's facility does not respond to the inmate's compassionate-release request within 30 days." Rodd, 966 F.3d at 744; 18 U.S.C. § 3582(c)(1)(A). The Bureau of Prisons (BOP) denied Drapeau's request for compassionate release, Doc. 128-1 at 2; Doc. 131 at 2, so Drapeau's claim is ripe for review.

1

I.   **Background**

On the evening of October 2, 2011, Drapeau recruited his cousin to drive him and his younger brother Gavin to Health Traversie's house in Lower Brule, South Dakota. Doc. 78 at 1; Doc. 111 at 3. Drapeau was drunk at the time and had a history of serious alcohol abuse. Doc. 111 at 4–5. He directed his cousin to park in a way where they could exit quickly. Doc. 111 at 3. Then Drapeau and Gavin entered Traversie's home to confront him. Doc. 78 at 1. Gavin knocked Traversie to the ground, and Drapeau began to hit, kick, and stomp Traversie's head with shod feet until Traversie became unconscious and was bleeding heavily. Doc. 78 at 2; Doc. 111 at 4. Drapeau and Gavin fled the scene. Doc. 78 at 2; Doc. 111 at 4.

Traversie was airlifted to a hospital an hour later. Doc. 78 at 2. He had traumatic brain injuries, which were consistent with injuries from multiple blows to the head from different angles. Doc. 78 at 2. Drapeau was arrested shortly thereafter and given Miranda warnings. Doc. 111 at 4. He told law enforcement that he did not care whether Traversie lived or died. Doc. 111 at 4. Traversie was taken off life support and pronounced dead a little over a week after the attack. Doc. 78 at 2.

Drapeau and Gavin were indicted for first-degree burglary, first-degree murder, and aiding and abetting on October 12, 2011. Doc. 30 at 1. Drapeau ultimately agreed to plead guilty to second-degree murder. Doc. 106 at 1. In the factual basis statement of the plea deal, Drapeau admitted that he "was the primary aggressor and inflicted the most blows and kicks upon Traversie." Doc. 78 at 2. The sentencing guideline range for the offense was 168 months to 210 months in prison, and the offense had a maximum sentence of life in prison. Doc. 111 at 2–3.

At the sentencing hearing on July 3, 2012, this Court considered Drapeau's "history of confrontations and problems" with the victim, troubled history with alcoholism, limited criminal

2

history, and supportive family. Doc. 111 at 2–4. This Court also noted that Drapeau was the primary aggressor of the attack, and Drapeau's expressed lack of remorse or concern for Traversie afterwards indicated that he was a danger to the public. Doc. 111 at 5–6. After noting Drapeau's conduct invoked significant concerns "for punishment, deterrence, and protection of the public," this Court sentenced Drapeau to 210 months in prison (17.5 years), the maximum under the guideline range. Doc. 111 a 5–6. Gavin negotiated a plea agreement and pled guilty to voluntary manslaughter, Doc. 79 a 2 in 3:11-CR-30136-RAL-2, and received a 57 month prison sentence. Doc. 103 at 3 in 3:11-CR-30136-RAL-2.

## II.   Legal Standard

The First Step Act modified 18 U.S.C. § 3582(c) to allow inmates to move to reduce their sentences based on "'extraordinary and compelling' circumstances." United States v. Loggins, 966 F.3d 891, 892 (8th Cir. 2020). Such a motion "is sometimes described as a request for 'compassionate release.'" Id.; see also United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

In considering a motion for compassionate release, a court first considers whether the motion is supported by the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892. "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." Loggins, 966 F.3d at 893. The defendant has the burden to show that his circumstances warrant a sentence reduction under 18 U.S.C. § 3582(c). United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). After considering the § 3553(a) sentencing factors, a court may grant a motion for compassionate release if it is consistent with the relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892.

**III.     Discussion**

    **A. 18 U.S.C. § 3553(a) Sentencing Factors**

Section 3553(a) sentencing factors include:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>     **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     **(B)** to afford adequate deterrence to criminal conduct;
>     **(C)** to protect the public from further crimes of the defendant; and
>     **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . ;
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

Drapeau argues his early release would not be inconsistent with § 3553(a) sentencing factors because he has served over half of his sentence and has made progress toward rehabilitation. Doc. 128 at 18–20. He also claims that changes in day-to-day prison life during the COVID-19 pandemic have increased the severity of his sentence by limiting visitor hours and restricting movement within the prison. Doc. 128 at 22.

Initially, § 3553(a) sentencing factors weigh against granting Drapeau's motion for compassionate release. Although day-to-day prison life has changed in response to the COVID-19 pandemic, the predominant factors considered by this Court at Drapeau's sentencing were the advisory guideline range, the nature and circumstances of the offense, Drapeau's personal history leading up to the offense, punishment, deterrence, and protection of the community; and none of those factors have changed. See United States v. Rodd, 966 F.3d 740, 747 (8th Cir. 2020) (quoting United States v. Rodd, No. CR 13-230 ADM/JSM, 2019 WL 5623973, at *4 (D. Minn. Oct. 31,

2019)) (affirming the denial of an inmate's motion for compassionate release when "the Section 3553(a) factors present at sentencing have not changed").

### B. Extraordinary and Compelling Reason

The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states that "extraordinary and compelling reasons" may exist under the following circumstances:

> (A) "Medical Condition of the Defendant--" such as when the defendant is suffering from a terminal illness, a serious cognitive or functional impairment, or deterioration from the aging process;
> (B) "Age of the Defendant--" such when the defendant is at least 65 years old, suffering serious physical or mental deterioration due to the aging process, and has served certain portion of his sentence;
> (C) "Family Circumstances--" which may apply upon
>    (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or
>    (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner;" or
> (D) "Other Reasons," such as when "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).[1]

---

[1] The Sentencing Commission has not had a quorum since the First Step Act has passed, and so it has not updated its policy statement. United States v. Vonwille, No. 4:19-CR-40023-01-KES, 2021 WL 1734337, at *2 (D.S.D. May 3, 2021). As a result, district courts have questioned whether 18 U.S.S.G. § 1B1.13 still applies and whether courts may consider other "extraordinary and compelling" reasons under the "Other Reasons" subsection, U.S.S.G. § 1B1.13 cmt. n.1(D). See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-CR-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same); United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (same). The Eighth Circuit has not yet addressed the issue. United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); Vonwille, 2021 WL 1734337, at *2 (citing Vangh, 990 F.3d at 1141 n.3).

Drapeau's circumstances are not an "extraordinary and compelling reason" for early release under U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). However, Drapeau argues that, cumulatively, there are three factors that warrant his release under the "Other Reasons" subsection, U.S.S.G. § 1B1.13 cmt. n.1(D). Doc. 128 at 8.

First, he argues that he needs to be released to care for his mother, who suffers from psoriasis and high blood pressure, has difficulty walking due to rheumatoid arthritis in both knees, has fallen several times in the last few years, and does not have other family members who can provide care when Drapeau's father is working. Doc. 128 at 8–10. Drapeau's mother submitted a letter in support of Drapeau's motion, confirming that she has health problems and needs help when her husband is at work, Doc. 128-1 at 4–5, and Drapeau's father submitted a letter in support of the motion stating he believes that Drapeau is drug and alcohol free. Doc. 128-1 at 18. Drapeau argues that U.S.S.G. IBI.13 cmt. n.1(C)(i)—"Family Circumstances" based on the "death or incapacitation of the caregiver of the defendant's minor child or minor children,"—supports his motion for release under IBI.13 cmt. n.1(D)—"Other Reasons"—because his mother is "incapacitat[ed]." Doc. 128 at 8. Drapeau also argues that his sentence is unfairly disproportionate because it is much longer than Gavin's sentence. Doc. 128 at 8, 12, 15. Lastly, Drapeau argues that he is entitled to relief because he has served most of his sentence and his release would help his rehabilitation. Doc. 128 at 8, 16–17. Drapeau offers evidence that he obtained his GED, received positive work evaluations, and has had no serious disciplinary reports in the last two years to support this claim. Doc. 128 at 17; Doc. 128-1 at 21; <u>see also</u> Doc. 130 at 332–34. This Court applauds Drapeau for his self-improvement efforts and behavioral control in custody these past two years.

6

Although Drapeau's mother has psoriasis, high-blood pressure, and some arthritis-related mobility issues, she is not incapacitated,[2] and Drapeau has not shown that he is the only person who can care for her. See Doc. 128 at 8–10; Doc. 128-1 at 5. Further, U.S.S.G. 1B1.13 cmt. n.1(C) only provides that the incapacitation of an inmate's spouse or the primary caregiver of an inmate's child(ren) may be an "extraordinary and compelling reason." Drapeau's claim concerning his mother's need for care is not a "extraordinary and compelling reason" to reduce his sentence.[3]

Drapeau's claims concerning the "disproportionate" length of his sentence and rehabilitation also do not warrant relief. As discussed, Drapeau's sentence was within the guideline range, and Drapeau admitted that he, not Gavin, "was the primary aggressor and inflicted the most blows and kicks upon Traversie." Doc. 78 at 2. Drapeau's sentence was not disproportionate to the gravity of his offense, but rather, as noted by this Court during Drapeau's sentencing hearing, reflected significant concerns "for punishment, deterrence, and protection of the public." Doc. 111 a 5–6. See also U.S.S.G. 1B1.13 cmt. n.3 (stating that rehabilitation alone is not an "extraordinary and compelling reason"); 28 U.S.C. § 994(t) (same).

Neither does the COVID-19 pandemic warrant Drapeau's early release. The BOP has changed its operations to follow Center for Disease Control and Prevention guidelines during the COVID-19 pandemic for the protection of inmates and staff. Doc. 131 at 2–3. At the time the

---

[2] Guidance from the BOP Program Statement on U.S.S.G. 1B1.13 cmt. n.1(C)(i) states that "'incapacitation'" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement 5050.50, accessible at https://perma.cc/98YN-KRQX.

[3] The Government argues that this Court should limit its review to whether Drapeau's claim concerning his mother is an "extraordinary and compelling reason" for compassionate release, as this was the only argument Drapeau raised to the BOP. Doc. 131 at 2. It makes no difference whether this Court so limits its review of Drapeau's arguments because he has not met his burden to show that compassionate release is warranted.

Government submitted its brief, two inmates and two correctional staff members were positive for COVID-19 at the prison where Drapeau is incarcerated, and inmates and staff who test positive for the virus are quarantined from the rest of the inmate population. Doc. 131 at 3. COVID-19 vaccines have been offered, or are in the process of being offered, to all correctional staff members and inmates, and Drapeau has been vaccinated. Doc. 131 at 2, 4. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). See also United States v. Gater, 857 Fed. Appx. 259, 261 (8th Cir. 2021) (cleaned up) (affirming a district court's denial of a motion for compassionate release when the district court found that the petitioner "did not have any major medical issues and the mere possibility of contracting COVID-19 in prison, alone, . . . does not meet the extraordinary or compelling standard to warrant a sentence reduction").

### C. Danger to the Community

Finally, the Sentencing Commission's policy statement requires a court to determine that an inmate "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before granting a motion for compassionate release. U.S.S.G. 1B1.13(2); see also 18 U.S.C. § 3142(g) (providing the factors that a court shall consider in determining whether a defendant would pose a danger if released in the community). In 2011, Drapeau committed a violent and brutal crime by kicking and stomping on Heath Traversie's head until he was bleeding heavily and so severely brain damaged that he died a week later. Doc. 78 at 2; Doc. 111 at 4. Although Drapeau has not had disciplinary reports in the last two years, Doc. 128 at 20, he was written up for drug/alcohol possession in March 2013, December 2016, and in September 2018,

and for fighting in July 2017. Doc. 130 at 332–34. This Court cannot conclude that Drapeau "is not a danger to the safety of any other person or to the community" if released after serving only half his sentence. U.S.S.G. 1B1.13(2).

### IV. Conclusion and Order

Because of an absence of any extraordinary and compelling reason for Drapeau's release under the FSA, it is

ORDERED that Drapeau's motion for relief under the First Step Act, Doc. 128, is denied.

DATED this 18th day of October, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE